IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VICKI LYNN CAMP,
    Plaintiff,

vs.                                    Case No.:  3:14cv123/MCR/EMT

BRIDGEWAY CENTER, INC.,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Vicki Lynn Camp ("Camp"), proceeding pro se and in forma pauperis, initiated this employment discrimination action by filing a complaint under 42 U.S.C. § 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964) ("Title VII"), 29 U.S.C. § 621, *et seq.* (Age Discrimination in Employment Act) ("ADEA"), 42 U.S.C. § 12112, *et seq.* (Americans with Disabilities Act) ("ADA"), and 29 U.S.C. § 2601, *et seq.* (Family Medical Leave Act) ("FMLA") (doc. 1). Defendant Bridgeway Center, Inc. ("Bridgeway"), seeks dismissal of Camp's Title VII, ADA, and FMLA claims for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) (doc. 11).  Camp filed a response in opposition to the motion (doc. 13).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(E); *see also* 28 U.S.C. § 636(b)(1)(B), (C). Upon review of the parties' submissions, it is the opinion of the undersigned that the motion to dismiss filed by Bridgeway should be granted.

I.    BACKGROUND AND PROCEDURAL HISTORY

      Camp was employed by Bridgeway from February 13, 1998, until November 29, 2012 (*see* doc. 2, Complaint at 3). Her last position was Targeted Case Manager (*see* doc. 11, Motion to Dismiss, Ex. B, Florida Commission on Human Relations ("FCHR"), Complaint of Discrimination). On August 27, 2012, Camp was informed by Jamie Tutnjevic, a case management supervisor, that

Camp would be receiving a raise (*see* Complaint at 4).  On October 8, 2012, Camp received an annual performance evaluation from Ms. Tutnjevic, and Ms. Tutnjevic recommended a raise based upon Camp's job performance (*id.*).  Camp complained that she did not receive a raise as promised on August 27, 2012, but her younger co-worker received a raise; and Camp told Tutnjevic that she believed Bridgeway discriminated against her based upon her age (*id.*).

On November 5, 2012, Ms. Tutnjevic and Larry McFarland, a representative from Bridgeway's human resources department, suspended Camp for five days without pay (from November 5 through November 9, 2012) (*see* Complaint at 5; *see also* FCHR Complaint of Discrimination).  On November 13, 2012, after her suspension had ended, Tutnjevic and McFarland placed Camp on probation (*see* Complaint at 5).  On November 28, 2012, Camp requested FMLA leave to care for her mother (*see* Complaint at 5; *see also* doc. 13, Response to Motion to Dismiss, Ex. D, Application for Family or Medical Leave).  On the next day, November 29, 2012, Ms. Tutnjevic and Mr. McFarland asked Camp to resign from employment, or she would be terminated (*see* Complaint at 5).  Camp resigned (*see* Complaint at 5; *see also* doc. 13, Response to Motion to Dismiss, Ex. A, Letter of Resignation).  In November 2012, Camp was replaced by a younger employee (*see* Complaint at 5).  On December 5, 2012, Camp sent Bridgeway a letter rescinding her resignation (*id.*).  On December 19, 2012, Bridgeway refused to reinstate Camp (*id.*).  On December 20, 2012, Camp executed a U.S. Department of Labor Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation, acknowledging she received payment of back wages required by the FMLA for the period December 8, 2012 through March 2, 2013, and acknowledging that by accepting payment, she gave up her right to bring suit against Bridgeway for wages for that period (*see* Motion to Dismiss, Ex. D, U.S. Department of Labor Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation).

On September 25, 2013, Camp filed intake questionnaires with the Equal Employment Opportunity Commission ("EEOC") and the FCHR alleging discrimination (s*ee* Complaint at 3; *see also* doc. 13, Response to Motion to Dismiss, Ex. C).  On September 25, 2013, the EEOC notified Bridgeway that a charge of employment discrimination was filed against it under the ADEA (*see* doc. 13, Response to Motion to Dismiss, Ex. A).

On November 6, 2013, Camp filed a complaint of discrimination with the FCHR ("FCHR Complaint of Discrimination") alleging Bridgeway discriminated and retaliated against her based upon her sex and age (*see* Motion to Dismiss, Ex. B, FCHR Complaint of Discrimination). She alleged the most recent discrimination occurred on November 29, 2012 (*id.*). On November 18, 2013, Camp filed a Charge of Discrimination with the FCHR and the EEOC (*see* Motion to Dismiss, Ex. C, Charge of Discrimination). She alleged Bridgeway discriminated and retaliated against her on the basis of age and disability, in violation of the ADA and the ADEA, by terminating her employment on November 29, 2012 (*see id.*).

On December 13, 2013, the EEOC dismissed Camp's charge of discrimination as follows: "Based upon its investigation, the EEOC is unable to conclude that the information obtained [through its investigation] establishes violations of the statutes." (*see* Motion to Dismiss, Ex. C, EEOC Dismissal and Notice of Rights). On January 15, 2014, the FCHR dismissed Camp's Complaint of Discrimination, on the ground that it was duplicative of her discrimination complaint filed with the EEOC (*see* Motion to Dismiss, Ex. E, FCHR Notice of Dismissal).

Camp commenced the instant employment discrimination action on March 12, 2014 (doc. 1). In her Complaint, she claims she was terminated from employment based on her gender, age, disability (specifically, her role as a caregiver for her disabled mother), and in retaliation for asserting her rights under the FMLA and complaining to a supervisor that a younger co-worker received more favorable treatment (*id.* at 4–5). As relief, Camp seeks reinstatement, back pay, front pay, compensation for lost benefits, and compensation for emotional pain and suffering (*id.* at 6).

II.     MOTION TO DISMISS STANDARD

Bridgeway seeks dismissal of Camp's FMLA, Title VII, and ADA claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In determining whether dismissal is warranted under Rule 12(b)(6), the allegations of the complaint are taken as true and are construed in the light most favorable to non-moving party. *See* Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

III. DISCUSSION

As previously mentioned, Bridgeway seeks dismissal of Camp's FMLA, ADA, and Title VII claims (*see* doc. 11, Motion to Dismiss). Specifically, Bridgeway argues Camp waived her right to bring an FMLA claim by executing a U.S. Department of Labor Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation (Motion to Dismiss at 5, Ex. D). Bridgeway additionally argues that Camp's ADA and Title VII claims are subject to dismissal for failure to exhaust administrative remedies (Motion to Dismiss at 5–9). Bridgeway also argues that Camp's factual allegations fail to state a plausible claim for relief under the FMLA, ADA, and Title VII (*id.* at 8–11).

   A.   <u>Waiver of FMLA Claim</u>

Bridgeway contends Camp waived her right to bring an FMLA claim by executing a U.S. Department of Labor ("DOL") Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation, Form WH-58, on December 20, 2013 (Motion to Dismiss at 5, Ex. D).

In Camp's response, she concedes that on December 20, 2013, she received $5,527.00 in back wages under the FMLA for the period December 8, 2012 through March 20, 2013 (*see* doc. 13, Response to Motion to Dismiss at 5). However, she argues this did not waive her right to bring suit seeking reinstatement based upon Bridgeway's terminating her employment in retaliation for exercising her FMLA rights (*see id.* at 2–5).

Congress enacted the FMLA to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1). The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:" (1) "a serious health condition that makes the employee unable to perform the functions of the position of such employee" or (2) "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1). An employee on FMLA leave must be reinstated to the position she held before she took FMLA leave. *See* 29 U.S.C. § 2614(a). The FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise their rights under the FMLA, 29 U.S.C. § 2615(a), and employers who violate the FMLA are subject to damages and equitable relief, 29 U.S.C. § 2617(a)(1)(A)–(B).

It is well established that an employee may not waive "prospective" rights under the FMLA, but an employee can release FMLA claims that concern past employer behavior. *See* 29 C.F.R. § 825.220(d) (2009); <u>Paylor v. Hartford Fire Ins. Co.</u>, 748 F.3d 1117, 1123 (11th Cir. 2014). In <u>Paylor</u>, the Eleventh Circuit considered, as a matter of first impression, the definition of "prospective" as it concerns FMLA rights. *Id.* The court determined that "prospective rights" under the FMLA are "those allowing an employee to invoke FMLA protections at some unspecified time in the future." *Id.* Prospective waiver is "'[a] waiver of something that <u>has not yet occurred</u>, such as a contractual waiver of future claims for discrimination upon settlement of a lawsuit.'" *Id.*

(quoting Black's Law Dictionary 1718 (9th ed. 2009)) (emphasis in original).[1] The court held that § 825.220(d)'s prohibition of "prospective" waiver means "that an employee may not waive FMLA rights, in advance, for violations of the statutes that have yet to occur." Paylor, 748 F.3d at 1124. The court then applied its interpretation of "prospective" to Paylor's circumstances:

> Here, the conduct Paylor complains about all happened before she signed the Severance Agreement [accepting 13 weeks of severance benefits and waiving any claims she might have had under the FMLA]. Paylor argues, specifically, that Hartford both interfered with and retaliated against her FMLA request when the company asked her to choose between the P[erformace] I[mprovement] P[lan] and the Severance Agreement. That allegedly unlawful conduct all occurred, at the latest, on September 16, 2009. But Paylor signed the Severance Agreement on September 17, 2009, thereby wiping out any backward-looking claims she might have had against her employer. In signing the agreement and accepting her severance benefits, Paylor settled claims "based on past employer conduct," § 825.220(d), and so the District Court did not err in concluding that the agreement was valid and that it entitled Hartford to judgment as a matter of law.

748 F.3d at 1124.

In the instant case, Camp signed the Department of Labor Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation, Form WH-58, on December 20, 2013, more than a year after her employment with Bridgeway ended, and the release concerned past employer behavior, specifically, behavior from December 8, 2012 through March 20, 2013. By accepting payment of $5,527.00 and signing the waiver, Camp waived her right to bring suit against Bridgeway for violating the FMLA by essentially terminating her in November of 2012, allegedly in retaliation for her submitting a request for family or medical leave under the FMLA. *See, e.g.*, Blackwell v. United Drywall Supply, 362 F. App'x 56, 58 (11th Cir. 2010) (unpublished) (in analogous context of prohibition against prospective waiver of right to sue for violations of Fair Labor Standards Act ("FLSA"), holding that employee's receipt of a WH-58 form

---

[1] The Eleventh Circuit gave an example of an unlawful prospective waiver: an employer could not offer all new employees a one-time cash payment in exchange for a waiver of any future FMLA claims. *See* Paylor, 748 F.3d at 1123.

and cashing of the employer's check was sufficient to effect a waiver of the right to sue under the FLSA.).[2]  Therefore, Camp's FMLA claim must be dismissed.

   B.   Failure to Exhaust Title VII and ADA Claims

Bridgeway contends Camp failed to properly exhaust her administrative remedies as to her ADA and Title VII claims (*see* Motion to Dismiss at 5–9).  Bridgeway contends Camp's claims under the ADA and Title VII were not brought within the 300-day window for filing.  Further, her ADA and Title VII claims were distinct and separate from her timely ADEA claims and thus did not relate back to the filing date of her ADEA claim.

Camp appears to rely upon her EEOC and FCHR intake questionnaires, both of which are dated September 25, 2013, as evidence that she satisfied the exhaustion requirement (*see* Response to Motion to Dismiss, Ex. C).

Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment.  *See* Bryant v. Rich, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (addressing the Prison Litigation Reform Act's exhaustion requirements); *see also, e.g.,* Basel v. Sec'y of Defense, 507 F. App'x 873, 874–75 (11th Cir. 2013) (unpublished) (applying Bryant to Title VII complaint); Tillery v. U.S. Dep't of Homeland Sec., 402 F. App'x 421, 424–25 (11th Cir. 2010) (unpublished) (same).  Thus, it is permissible for a district court to consider facts outside of the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits and the parties are given sufficient opportunity to develop a record.  *See* Bryant, 530 F.3d at 1376.  Deciding a motion to dismiss for failing to exhaust administrative remedies is a two-step process.  *See* Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).  First, the court must look to the factual allegations in the defendant's motion and the plaintiff's response, taking the plaintiff's version of the facts as true to the extent that it conflicts with that of the defendant.  *Id.*  If the complaint is not subject to dismissal at this step, the court must then make specific findings to resolve the parties' factual disputes, and determine

---

[2] The undersigned cites unpublished Eleventh Circuit decision only as persuasive authority and recognizes that they are not considered binding precedent.  *See* 11th Cir. R. 36-2.

Case No.: 3:14cv123/MCR/EMT

whether the defendant bore its burden of proving that the plaintiff failed to exhaust his administrative remedies.  *Id.* at 1082–83.

To bring a claim for discrimination in federal court under Title VII or the ADA, a plaintiff first must exhaust her administrative remedies by filing a charge of discrimination with the EEOC.  *See* Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam); *see also* 42 U.S.C. § 12117 (the powers, remedies, and procedures set forth in Title VII are the power, remedies, and procedures applicable to an employee claiming discrimination under the ADA).  Federal law and EEOC regulations require that charges under Title VII and the ADA be verified (i.e., under oath or affirmation), *see* 42 U.S.C. § 2000e-5(b), and contain, among other things, "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices," *see* 29 C.F.R. § 1601.12(a)(3).  Even though the regulations require that a charge contain particularized information, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII]."  Gregory, 355 F.3d at 1280 (citation omitted).  Accordingly, "the scope of an EEOC complaint should not be strictly interpreted."  *Id.*  In order to be timely within a deferral state, such as Florida, a charge of discrimination must be filed within 300 days of the last discriminatory act.  42 U.S.C. § 2000e–5(e)(1); *see also* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002) (stating that "[i]n a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days.").  Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge.  *See* Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000).

In the instant case, the last alleged discriminatory act occurred on November 29, 2012, when Camp was forced to resign or be terminated.  Her 300-day deadline for filing her EEOC complaint was September 26, 2013.  On September 25, 2013, Camp filed intake questionnaires with the EEOC and FCHR alleging only age discrimination (*see* doc. 21).  Based upon the specific circumstances of this case, the court considers Camp's intake questionnaires as her formal complaint of

discrimination.[3]  Camp did not check the box for sex or disability on either questionnaire, nor did she allege any facts in her narrative that could be construed to raise a discrimination claim based upon her gender or disability (*id.*).[4]

Additionally, although Camp's FCHR Complaint of Discrimination alleged discrimination and retaliation based upon age and gender, and she mentioned the ADA (she alleged she was discriminated against under Title VII "and/or" the ADEA "and/or" the ADA), that Complaint was filed on November 6, 2013, more than 300 days after she was terminated (*see* Motion to Dismiss, Ex. B, FCHR Complaint of Discrimination).  Additionally, although Camp filed an amended charge with the FCHR and the EEOC alleging discrimination and retaliation based upon age and disability, the amended charge was filed on November 18, 2013, more than 300 days after she was terminated (*see* Motion to Dismiss, Ex. C, Charge of Discrimination).  Further, the amended charge did not relate back to her original charge/intake questionnaire, because it raised new legal theories supported by facts distinguishable from the facts supporting her claims of discrimination and retaliation based

---

[3] The Eleventh Circuit has considered the interrelationship between an EEOC intake questionnaire and a formal EEOC charge of discrimination when assessing whether a charge of discrimination under Title VII or the ADA has been properly exhausted.  In Pijnenburg v. West Ga. Health Sys., Inc., the Eleventh Circuit stated, "as a general matter an intake questionnaire is not intended to function as a charge."  255 F.3d 1304, 1305 (11th Cir. 2001) (emphasis added).  The court went on to hold that the plaintiff's unverified intake questionnaire did not satisfy Title VII's timely filing requirement, because it did not notify the employer of the claim or initiate the EEOC investigation. *Id.* at 1306.  Shortly after Pijnenburg, the Eleventh Circuit decided Wilkerson v. Grinnell Corp., 270 F.3d 1314 (11th Cir. 2001).  In Wilkerson, the court held that an intake questionnaire could be considered a charge for the purpose of satisfying the statute of limitations where the questionnaire was verified, it contained the basic information required by a charge, and the form's language could have been interpreted to represent a charge.  270 F.3d at 1320–21.  Subsequently, in Bost v. Fed. Express Corp., the Eleventh Circuit held that the plaintiff's intake questionnaire, which was filed along with an affidavit, did not satisfy the requirements of a timely charge.  372 F.3d 1233, 1241 (11th Cir. 2004).  The court compared the circumstances with those presented in Wilkerson, and determined that the circumstances did not support a conclusion that the intake questionnaire satisfied the timely filing requirement because the plaintiff clearly understood the intake questionnaire was not a formal charge (as evidence by the fact that he later filed a timely charge), the EEOC did not initiate its investigation until after the plaintiff filed his formal charge, and the intake questionnaire form itself did not suggest it was a formal charge.  *Id.*

In the instant case, Camp's EEOC intake questionnaire was not verified; however, it contained the basic information required by a charge, the form's language could have been interpreted to represent a charge, and the EEOC immediately notified Bridgeway (on the same day that Camp filed the questionnaire) that a charge of discrimination had been filed against it under the ADEA alleging age discrimination and retaliation (*see* Motion to Dismiss, Ex. A).

[4] Camp also alleged Bridgeway retaliated against her for filing a FMLA request; however, she waived her FMLA claim, as previously discussed.

upon her age.  Nothing in Camp's intake questionnaires would have put Bridgeway or the EEOC on notice of a discrimination or retaliation claim based upon gender or disability.

The only claims that Camp properly exhausted were her claims of discrimination and retaliation under the ADEA; therefore, the Title VII and ADA claims asserted in her federal complaint should be dismissed with prejudice.

For the foregoing reasons, it is respectfully **RECOMMENDED**:

1.  That Defendant's motion to dismiss (doc. 11) be **GRANTED**, and Plaintiff's claims under the FMLA (including her retaliation claim), Title VII, and the ADA be **DISMISSED WITH PREJUDICE**.

2.  That this matter be referred to the undersigned for further proceedings on Plaintiff's claims of discrimination and retaliation under the ADEA, which are her only surviving claims.

At Pensacola, Florida this 16th day of September 2014.


/s/  Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  See **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**